Fred M. VILLA d/b/a Western Motors, Appellant,

v.

ALVARADO STATE BANK, Appellee.

No. 6229.

Court of Civil Appeals of Texas, Waco.

Jan. 8, 1981.

Albert Levy, John E. Alexander, III, McGuire, Levy & McCurley, Irving, for appellant.

Robert A. Sparks, Cleburne, for appellee.

## OPINION

JAMES, Justice.

This is a dispute over the title and right to possession of an automobile. Plaintiff-Appellant Villa, a wholesale automobile dealer, filed suit against Defendant-Appellee Bank for conversion of a 1978 Cadillac Coupe deVille automobile. Defendant-Appellee denied and counterclaimed for title and possession of the automobile, claiming a security interest in the vehicle. After trial before the court without a jury, judgment was rendered that Villa take nothing and that the Bank be awarded title and possession of the automobile. We affirm this judgment.

On December 12, 1979, Villa, a wholesale automobile dealer, sold a 1978 Cadillac through Metroplex Auto Auction, Inc. of Grand Prairie, Texas. At the time of the sale, the ultimate buyer, Mesa Auto Exchange of Mesa, Arizona, delivered to Villa a draft, drawn on the same Mesa Auto Exchange, in payment for the car. Instead of himself presenting the draft for payment, Villa endorsed the draft to Metroplex Auto Auction and also surrendered the car and its certificate of title to Metroplex, in exchange for which Metroplex issued a check payable to Villa, drawn on its account at Alvarado State Bank, for the amount of the agreed upon sale price. The certificate of title was actually endorsed to "Mesa Auto Exchange", the ultimate buyer, rather than to Metroplex Auto Auction, but physical possession of the certificate and of the car were surrendered to Metroplex. The car was subsequently forwarded to Mesa, the ultimate buyer, but Metroplex retained possession of the certificate of title to the car.

Prior to the transaction in question Metroplex had secured a $100,000 line of credit with Appellee Alvarado State Bank. The Bank had agreed to extend immediate credit on drafts that were received by Metroplex in payment for automobiles sold at auction. Under this agreement, when Metroplex received drafts (such as the draft drawn on Mesa Auto Exchange), Metroplex would present the draft and the certificate of title to the car purchased by the draft to the bank, which would then immediately deposit the face amount of the draft into the checking account of Metroplex. In return for this line of credit Metroplex granted to the Bank a security interest in "All motor vehicles purchased from time to time by debtor (Metroplex) with the proceeds of funds advanced by Bank. Such vehicles shall be inventory in hands of debtor." A financing statement reflecting this security interest was properly filed with the Secretary of State's office prior to the transaction in issue in this case.

After the sale by Villa, Metroplex Auto Auction presented the draft of Mesa Auto Exchange and the certificate of title to the Cadillac in question to the Alvarado State Bank on December 13, 1979. In accordance with the Bank's agreement it deposited the face amount of the draft into the checking account of Metroplex. However, when Mr. Villa presented the check issued to him by Metroplex for payment by the Bank, Metroplex's account was insufficient and the check was dishonored. Thereafter Mesa Auto Exchange also failed to honor its draft and the Bank secured possession of the Cadillac, claiming title thereto under its security agreement with Metroplex.

As previously noted, the trial court rejected Villa's claim that the Bank converted the automobile and awarded title and possession of the car to the Bank, concluding, inter alia, that the Bank "had and has a valid security interest in (the) car" and that "the rights of the Bank were prior and superior to the rights of Villa as an unpaid cash seller."

Appellant asserts three points of error in this appeal but the primary argument is Appellant's insistence that Metroplex Auto Auction never acquired any interest in the automobile in question. Appellant vigorously contends that Metroplex was merely the agent of the Seller (Villa) or of the Buyer (Mesa) or both; that Metroplex, as a mere agent, acquired no interest in the automobile at any time during the transaction in question; and that the Bank could not, as a matter of law, have a security interest in the automobile unless the debtor (Metroplex) had acquired some interest in the vehicle. Appellee, on the other hand, argues that Metroplex was not merely an agent in this transaction; that instead Metroplex was a purchaser of the automobile in question; that Metroplex paid for the automobile with a check, albeit later dishonored; that Villa surrendered possession of the car, the title thereto, and the draft of Mesa in return for the check; that, despite the fact that the title was signed over to Mesa rather than to Metroplex, all of the facts and circumstances indicate that the transaction was intended to convey title to Metroplex who would thereafter pass the title to Mesa when the draft was paid.

 Appellant, in its argument, relies heavily on the fact that the certificate of title in this case was signed directly over to Mesa Auto Exchange and the name of Metroplex never appears on the certificate as an owner or as a lienholder. However, the name on a certificate of title is not conclusive of ownership. The certificate of title only creates a presumption of ownership in a party whose name is shown thereon. The presumption may be overcome by evidence showing that in fact ownership is elsewhere. *Pioneer Mutual Compensation Co. v. Diaz*, 142 Tex. 184, 177 S.W.2d 202, 204 (1944); *Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763 (1940); *Motor Finance Co. v. Wolff* (Houston CA 1955) 387 S.W.2d 129, no writ; *Minter v. Joplin* (Amarillo CA 1976) 535 S.W.2d 737, no writ. The trial court in this case filed Findings of Fact which specifically included the following:

"2. Villa accepted check # 701 in the amount of $14,630.00 from Metroplex,

drawn on the account of Metroplex, payable to Villa in payment for two (2) vehicles, $9,700.00 of which constituted payment for car.

\*　　\*　　\*　　\*　　\*　　\*

"19. Villa intended to sell car for cash in exchange for check # 701 of Metroplex."

 Furthermore, there was evidence in this record to support these findings. First of all, the Appellant himself testified that there were two ways that he could have handled the transaction in question. He could have accepted directly the draft of Mesa Auto Exchange; he would then have taken the draft to his own bank which would have forwarded the draft to Arizona for payment. Mr. Villa said that this would have taken six or seven days and he would have had to wait that long before he would have received "cash" from the sale. Mr. Villa did not have a credit arrangement with a bank that would allow him to get "immediate credit" (or immediate cash) for drafts received in payment for vehicles sold. On the other hand, Mr. Villa could opt to take a check from the Metroplex Auto Auction, which would have meant that he would have immediate cash proceeds from the sale of the automobile. Metroplex would then have to collect the draft, but Metroplex had a credit arrangement with Appellee Bank so that in fact it could receive instant credit for drafts received in payment for automobiles sold by it. Mr. Villa chose the second option. An expert witness called by Villa to testify to the "customs and practices" of the auto auction business testified during cross-examination as follows:

"Q. ... Now, suppose that you had been the dealer, or the auctioneer in this case and you had paid Mr. Villa for the car and it had been good money and, in fact, the ultimate buyer for some reason returned the draft to you?

"A. It is very simple. The car belongs to me. I would get it bring it back and resell it.

\*　　\*　　\*　　\*　　\*　　\*

"A. It is very simple. The automobile belongs to me for the nine thousand seven hundred dollars. I would have to go get the car and come back and sell it because I issued my check."

While this testimony presumes that the check given by the auction company is honored by the bank, we cannot see how the "nature of the transaction" would be changed if the check were dishonored. Mr. Patterson, the owner of Metroplex, also testified that he in the past had to reclaim cars that had been paid for by drafts that were subsequently not honored. In those instances he resold the cars rather than returning them to the original sellers. We are of the opinion that the record amply supports the trial court's finding that the transaction between Villa and Metroplex was in the nature of a sale rather than in the nature of a mere agency arrangement. We therefore overrule Appellant's contention that Metroplex never acquired any interest in this automobile.

In another point of error Appellant contends that the description of collateral contained in the Bank's security agreement and in its financing statement were insufficient as a matter of law, and the Bank therefore failed to either attach or perfect a security interest in the automobile in question.

 For clarification, we note that the security agreement sets forth the agreement between the debtor and creditor and must contain a description sufficient to identify the property which they have agreed shall be the collateral for the debt.[1] The financing statement is the instrument designed to notify third parties (generally prospective buyers or lenders) that there may be an enforceable security interest in

---

1. The requirements for a written security agreement are set forth in Sec. 9.203, Tex.Bus. & C. Code.

the property of the debtor.[2] A proper security agreement is a requisite for attachment of the security interest in this case and a proper financing statement is a requisite for perfection of the security interest; both attachment and perfection are necessary for the enforcement of the Bank's security interest against a third party such as Villa.

■ The financing statement filed by the Bank in this case contained the following description of the property identified as collateral for Metroplex's debt:

"All motor vehicles purchased from time to time by Debtor with proceeds of funds advanced by Bank. Such vehicles shall be inventory in hands of Debtor."

The Texas Business and Commerce Code, Sec. 9.204(c), specifically allows for the creation of security interest in after-acquired property. The description in the instant case clearly indicates that the interest created extended to motor vehicles purchased in the future and was not limited to vehicles owned or held by the debtor at the time of the filing of the financing statement. The description of property not yet in existence or not yet owned by a debtor is necessarily limited in specificity. Moreover, the description contained in a financing statement need only be sufficient to put a third party on notice that there *may* be a security interest in the debtor's property. The third party must then make inquiry to discover the complete nature of the agreement between the debtor and his creditor. See Tex.Bus. & C. Code, Sec. 9.402, Comment # 2. In our opinion the description contained in Appellee Bank's financing statement is sufficient to put a third party on notice that there may be a security interest in any "motor vehicle" acquired or "purchased" by Metroplex. Such notice is all that was required.

The security agreement executed by Metroplex and Appellee Bank contained the same description of collateral that was included in the financing statement. In addi-

tion, however, the total financing agreement executed by them contained a rather detailed explanation of how the financing was to be handled, including a step-by-step description of how Metroplex was to present drafts and certificates of title to the Bank for credit, etc. In other words, the document described exactly the transaction which occurred in this case. Had Villa inquired about the financing arrangements of Appellee Bank and Metroplex, Villa would certainly have understood from the language of the agreement that the car sold by him to Metroplex would be collateral for Metroplex's debt once the Bank gave value to Metroplex. We hold that this agreement also adequately described the property that was to serve as collateral for the debt and therefore overrule Appellant's contention that the descriptions of collateral were insufficient.

■ Appellant's final point on appeal is the assertion that the trial court erred in holding that the Bank's security interest was superior to that of the Appellant.

We have held that the transfer of the automobile by Villa to Metroplex was a sale of the vehicle, i. e. Villa becomes an unpaid seller when the check issued by Metroplex was dishonored. Further we have held that the Bank's security interest was valid in that it was perfected and attached when the Bank gave value to Metroplex. Thus the question presented is which interest is superior—the interest of the unpaid seller or that of the secured creditor.

The Fifth Circuit Court of Appeals has considered in detail this same question under Texas law in the case of *Samuels & Co., Inc. v. Mahon*, 526 F.2d 1238 (1976), concluding that the interest of the secured creditor is superior. The position taken by the Fifth Circuit is the view of the majority of the courts that have addressed this issue, despite criticism received from some legal scholars. See "Reclamation by Cash Sellers", Colum.L.Rev., 947 (1977). The Beau-

---

2. The formal requisites for a financing statement are set forth in Sec. 9.402, Tex.Bus. & C. Code.

mont Court of Civil Appeals has also adopted the *Samuels* position. *Lief Johnson Ford, Inc. v. Chase National Bank* (Beaumont CA 1978) 578 S.W.2d 792, no writ. After careful consideration we too adopt the *Samuels* position and hold that Appellee Bank's security interest is superior to that of Villa, an unpaid cash seller, and that the trial court was correct in so holding.

Having overruled all of Appellant's points, we affirm the judgment of the trial court.

AFFIRMED.