**In re Seth Richard FREEMAN, dba The Gold Chain Supermarket, Inc. and Seth R. Freeman Fine Jewelry and Accessories, Debtor.**

**Bankruptcy No. LA–81–08465(CA).**

United States Bankruptcy Court, C.D. California.

Sept. 8, 1983.

---

**MEMORANDUM OF DECISION**

CALVIN K. ASHLAND, Bankruptcy Judge.

**BACKGROUND**

This motion seeks to set aside a secured claim in excess of the value of certain collateral. The trustee asserts that the balance of the claim should be treated as an unsecured claim.

**FACTS**

The individual debtor and another formed a partnership named The Gold Chain Supermarket for the purpose of conducting a retail jewelry business. On May 21, 1978 the partnership borrowed $5,220.26 from Santa Barbara Bank & Trust (Bank) and executed a security agreement and financing statement which described the collateral securing the obligation as:

> All furniture and fixtures and inventory of the Gold Chain Supermarkets now or at any time located or installed on the land or in the improvements at *813 State Street, Santa Barbara, California.* (Emphasis added)

The obligation was guaranteed by the debtor's father, Howard E. Freeman (Prof. Freeman). Thereafter, the debtor incurred further obligations to Bank for a total of $19,324.

In 1979, the partnership incorporated and all the assets and liabilities were assigned to The Gold Chain Supermarkets, Inc. Both the corporation and the business address at 813 State Street were abandoned in November of 1980.

The individual debtor continued business as Seth R. Freeman Fine Jewelry and Accessories at 1307 State Street, Santa Barbara until the filing of its chapter 7 petition in June of 1981. Bank was notified of the new location and new business, however,

neither a new financing statement nor a security agreement were filed. As of June 1981, the obligation to the Bank was in default and Bank caused Prof. Freeman to pay $5,321 on account of the guarantee.

While doing business at the new location, debtor disposed of all of approximately $50,000 worth of jewelry items which had been transferred from the original location and purchased an additional $200,000 of new inventory. Only three watches remained from the inventory transferred from 813 State Street. The trustee sold these items and the proceeds of $5,220.26 were turned over to Bank in satisfaction of the secured claim. The Bank in turn paid Prof. Freeman $1,292 as a prorata portion of this recovery. The trustee now seeks to have the agreed upon balance of $14,755.73 declared an unsecured obligation and further contends that this amount should be reduced by the amount paid by Prof. Freeman on account of the guarantee.

## ISSUE

Whether the Bank's security interest in furniture, fixtures, and inventory at a location specified in the security agreement created a security interest in similar items located at a different location?

## DISCUSSION

The trustee contends that the security agreement and financing statement asserted by Bank do not apply to inventory acquired by the debtor while doing business at its new location at 1307 State Street, Santa Barbara. Bank counters that abandonment of the first location and creation of the second location is irrelevant. It cites authority in support of the theory that a change in the location of the inventory securing an obligation does not invalidate the security agreement. For the reason given below, I conclude that the abandonment of the location specified in the security agreement and the subsequent liquidation of the inventory transferred from that location, extinguished any security interest which the Bank may have had.

*Collateral securing the obligation was specifically limited to furniture, fixtures and inventory located at 813 State Street, Santa Barbara.*

The financing statement and security agreement contain narrow and specific description of collateral securing this obligation. Although § 9110 of the California Commercial Code is broadly construed to permit any description of collateral to suffice so long as it "reasonably identifies what is described", the cases are clear that the description of the collateral may have the effect of restricting the security interest created in the security agreement. *See, In re Amex-Protein Development Corporation,* 504 F.2d 1056, 1061 (9th Cir.1974).

In the present case the collateral was specifically limited to items located at 813 State Street. Only those items located at that location gave rise to the security interest.

The cases cited by Bank, *In re Little Brick Shirthouse, Inc.,* 347 F.Supp. 827 (1972) and *Owen v. McKesson and Robbins Drug Company,* 349 F.Supp. 1327 (1972) are both readily distinguished. Neither case concerned a security agreement or financing statement which specifically limited the description of the collateral to a specified location. *Little Brick Shirthouse, supra* at 829 was cited in *Owen* and correctly held that as a general rule, the description of the collateral need not set forth the address of where the collateral is to be located. The court noted that the address of the debtor was given in a separate section and not specifically in the description of the collateral and therefore it had no limiting effect. By contrast, in the present case the description of the collateral is specifically limited to 813 State Street and done so with the purpose of restricting the security interest.

In *Matter of California Pump and Mfg. Co.,* 588 F.2d 717, 719 (9th Cir.1978) the court was faced with a situation similar to the present case. There the security agreement specifically limited the collateral to items located at the debtor's business in San Francisco. Debtor had such equipment only in Fresno and not in San Francisco.

The court examined the requirements of § 9110 and held that given the specific reference to San Francisco the description did not reasonably identify the property actually located in Fresno.

The same reasoning can be applied to the present case. The security interest was limited to property located at 813 State Street. The security agreement reasonably identified those items and limited them to that location. Upon abandonment of that location, those items totaling approximately $50,000 were transferred to 1307 State Street. The security interest in these items was not extinguished by this transfer, however, the security agreement no longer reasonably identified the collateral as the new inventory purchased and located at that new location. The security interest was therefore limited to those items which remained after the transfer to the new location. Those items were liquidated by the trustee and the proceeds transferred to the Bank in full satisfaction of its secured claim. What remains is merely an unsecured claim for the balance.

*Subrogation right of Prof. Freeman*

To the extent Prof. Freeman as guarantor pays the Bank, he is entitled to be subrogated in the Bank's claim.

CONCLUSION

The security agreement and financing agreement specifically limited the security interest to property located at the debtor's first business address. Any indebtedness in excess of the value of those items is an unsecured claim.

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate judgment should be lodged by the attorney for the trustee.