**CROW–SOUTHLAND JOINT VENTURE NO. 1, Appellant,**

v.

**NORTH FORT WORTH BANK, Appellee.**

No. 05–91–01313–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 1992.

Rehearing Denied Oct. 22, 1992.

---

Aimee Hess, Gary Kessler, Howard C. Rubin, Dallas, for appellant.

Mary L. Enox, Michael W. Broome, Bedford, for appellee.

Before LAGARDE, KINKEADE and KAPLAN, JJ.

## OPINION

KAPLAN, Justice.

This case involves conflicting claims to proceeds from the sale of certain collateral. North Fort Worth Bank (Bank) claimed a superior right to the proceeds based on a promissory note, security agreement, and financing statement. Crow–Southland Joint Venture No. 1 (Crow–Southland) asserted a right to the proceeds pursuant to a contractual and statutory landlord's lien. The trial court awarded the proceeds to Bank. Crow–Southland appeals. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. Bank's Claim

On May 11, 1981, Diversified Packaging, Inc. executed a promissory note in favor of Bank. The principal amount of the note was $250,000. The parties entered into a security agreement to secure repayment of the note. The agreement gave Bank a security interest in the following collateral:

> All equipment now owned or hereafter acquired including, but not limited to, the attached list marked Schedule "A".

Schedule "A" contained a list of certain plant machinery and equipment. The promissory note, security agreement, and Schedule "A" all failed to specify the location of the collateral. However, both the note and security agreement set forth Diversified's address as 4800 Simonton Road in Dallas, Texas.

On June 4, 1981, Bank filed a UCC–1 financing statement with the Secretary of State.[1] This financing statement identified the debtor as Diversified and the secured party as Bank. Diversified's address was

---

1. The parties stipulated that the financing statement was filed on June 21, 1981. However, a copy of the financing statement contained in the record shows that the document was filed with the Secretary of State on June 4, 1981. This discrepancy does not affect the resolution of the issues in this case.

stated as 4800 Simonton. The security interest was generally described as:

All right, title [and] interest now owned and at any time hereafter acquired by Debtor in all: See attached Exhibit "A".

Exhibit "A" stated, in pertinent part:

This [financing] statement covers all of the right, title and interest of the Debtor in and to the following types (or items) of property now owned or hereafter acquired by Debtor and all accessions or substitutions therefor and all products and proceeds thereof:

(1) All fixtures, furniture, furnishings, equipment, leases, rentals, and personal property of any kind or character now or hereafter related to, situated on or used or acquired for use, on or in connection with the use of the land described on Exhibit "B" hereto or in any improvements now or hereafter constructed thereon (the "Mortgaged Property")....

Exhibit "B" was not filed with the Secretary of State. Bank and Crow–Southland stipulated that the missing Exhibit "B" contained a legal description of the premises at 4800 Simonton. The parties did not stipulate that Exhibit "B" was filed as part of the financing statement.

### 2. Crow–Southland's Claim

On March 16, 1983, Diversified leased office and warehouse space from Crow–Southland. The leased premises were located at 4545 Langland Road in Farmers Branch, Texas. The lease agreement gave Crow–Southland a security interest in:

all goods, wares, equipment, fixtures, furniture, inventory, accounts, contract rights, chattel paper and other personal property of Tenant situated on the [leased] premises.

This contractual lien secured payment of rent and other sums due under the lease agreement. Crow–Southland also had a statutory landlord's lien on all property situated on the leased premises pursuant to section 54.021 of the Texas Property Code.

### 3. The Lawsuit

Diversified defaulted on its obligations under the promissory note and lease agree-

ment. On January 23, 1984, Crow–Southland re-entered the leased premises at 4545 Langland and took possession of the collateral. The property was sold at a public auction after notice to all interested parties. The net proceeds of the sale were $123,486.56.

Bank sued Crow–Southland to recover the proceeds from the sale of the collateral. Bank claimed a superior right to the proceeds by virtue of a properly executed security agreement, which was perfected by filing a financing statement. Crow–Southland contested the validity of Bank's security interest in the proceeds and asserted that it was a priority lienholder under the terms of the lease agreement. The case was tried on stipulated facts. The trial court awarded the proceeds to the Bank. The court specifically found:

1) Bank perfected its security interest in and to Diversified's office furniture, equipment, and inventory on June 21, 1981, and timely filed an appropriate UCC financing statement with the Secretary of State;

2) Bank's financing statement was sufficient to give notice to any third party of its interest in and to Diversified's equipment and inventory;

3) Bank's financing statement was on file and proper notice was given to all third parties at the time Diversified entered into its lease agreement with Crow–Southland on March 16, 1983;

4) Bank's security interest in and to Diversified's office furniture, equipment, and inventory of Diversified was prior in time and interest to that of Crow–Southland; and

5) Bank's security interest in and to Diversified's office furniture, equipment, and inventory is superior to and superseded that of Crow–Southland.

Crow–Southland filed a motion for new trial, which was overruled. This appeal follows.

### ISSUES ON APPEAL

The broad issue on appeal is whether the description of the collateral in Bank's security agreement is limited by the description

contained in the financing statement. Crow–Southland contends that the financing statement limits Bank's security interest to property located at 4800 Simonton. The proceeds made the basis of this suit were generated from the sale of property located at 4545 Langland. Crow–Southland argues that the plain language of the financing statement, case law construing this language, and the policy behind the Uniform Commercial Code negates the Bank's security interest in proceeds realized from the sale of this collateral. Alternatively, Crow–Southland contends that it was entitled to a credit for the rental value of the leased premises and that the trial court erred in failing to enter its requested findings of fact and conclusions of law.

## DESCRIPTION OF COLLATERAL

Crow–Southland challenges the sufficiency of the evidence to support seven findings of fact and six conclusions of law. Specifically, Crow–Southland contends that the evidence is legally and factually insufficient to establish the identity of the collateral covered by Bank's security agreement. Crow–Southland also asserts that the existence and priority of its statutory lien and contractual security interest were established as a matter of law and that the trial court's contrary findings and conclusions are against the great weight and preponderance of the evidence.

### 1. Standard of Review

Bank and Crow–Southland stipulated to all relevant facts and exhibits in this case. The judgment recites that "all matters in fact and things in controversy were submitted to the court by stipulation." Although the stipulation was not signed and certified by the trial court, it is clear that this case was tried on stipulated facts. We will therefore consider this appeal as an agreed case under rule 263 of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 263; *Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys.*, 784 S.W.2d 122, 125 (Tex.App.—Austin 1990, writ denied); *Henry S. Miller Co. v. Wood*, 584 S.W.2d 302, 303–04 (Tex.Civ.App.—Texarkana 1979), *aff'd*, 597 S.W.2d 332 (Tex.1980).

Stipulations in an agreed case are binding upon the parties, the trial court, and the reviewing court. *M.J.R. Fare v. Permit & License Appeal Bd.*, 823 S.W.2d 327, 330 (Tex.App.—Dallas 1991, writ denied). All facts necessary to the presentation of the case are conclusively presumed to have brought before the court. We do not draw any inference or find any facts not embraced in the agreement. *Cummins and Walker Oil Co., Inc. v. Smith*, 814 S.W.2d 884, 886 (Tex.App.—San Antonio 1991, no writ). We do not review the legal or factual sufficiency of the evidence in a case tried on stipulated facts. Rather, we review only the correctness of the application of law to the admitted facts. *Reed v. Valley Fed. Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

### 2. Applicable Law

A security interest is an interest in personal property or fixtures that secures the payment or performance of an obligation. TEX.BUS. & COM.CODE ANN. § 1.201(37) (Vernon Supp.1992). Generally, a security interest is created by a written agreement that contains a description of the collateral. *Id.* § 9.203(a)(1). Any description of personal property is sufficient if it reasonably identifies what is described. *Id.* § 9.110.

A financing statement must be filed to perfect a security interest in personal property in the possession of the debtor. *Id.* § 9.302. The financing statement must: (1) give the names of the debtor and secured party; (2) be signed by the debtor; (3) give an address of the secured party from which information concerning the security interest may be obtained; (4) contain the mailing address of the debtor; and (5) contain a statement indicating the types, or describing the items, of collateral. *Id.* § 9.402(a). Substantial compliance is sufficient to satisfy the requirements of section 9.402. *Id.* § 9.402(h).

Security agreements and financing statements serve different purposes. The security agreement defines the collateral to enable the debtor and other interest-

ed persons to identify the property that the creditor may claim as security. *Thorp Commercial Corp. v. Northgate Indus., Inc.,* 654 F.2d 1245, 1248 (8th Cir.1981); *Villa v. Alvarado State Bank,* 611 S.W.2d 483, 486 (Tex.Civ.App.—Waco 1981, no writ). Accordingly, the security agreement must describe the collateral. TEX.BUS. & COM.CODE ANN. § 9.203(a); *Thorp,* 654 F.2d at 1248. The financing statement, on the other hand, merely serves to notify third parties that the debtor's property is *or may be* encumbered. TEX.BUS. & COM.CODE ANN. § 9.402 comment 2; *Marine Drilling Co. v. Hobbs Trailers,* 697 S.W.2d 831, 833 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Once put on notice, a third party must make inquiry to discover the complete nature of the agreement between the debtor and creditor. *Marine Drilling,* 697 S.W.2d at 833; *Villa,* 611 S.W.2d at 487. The description of collateral in the financing statement does not serve to identify the collateral and define property that the creditor may claim as security—it simply warns others of the prior security interest. *Thorp,* 654 F.2d at 1248; *Marine Drilling,* 697 S.W.2d at 833. Thus, the financing statement may describe the items of collateral *or* merely designate the *types* of collateral. TEX.BUS. & COM.CODE ANN. § 9.402(a); *Thorp,* 654 F.2d at 1249 & n. 6.

### 3. Application of Law to the Facts

■ We determine that the description of collateral contained in Bank's security agreement and financing statement was sufficient to perfect a security interest in the proceeds from the sale of property located at 4545 Langland. The financing statement referred to certain types or items of property "now owned or hereafter acquired by [Diversified] ... situated on or used or acquired for use, on or in connection with the use of the land described on Exhibit "B" ..." Exhibit "B" was not filed as part of the financing statement. This reference to a non-existent document should have suggested to any interested party the necessity of further inquiry to ascertain the complete nature of the security agreement between Bank and Diversified. TEX.BUS. & COM.CODE ANN. § 9.402 comment 2; *see also Marine Drilling,* 697 S.W.2d at 833. A diligent search and inquiry by Crow–Southland would have revealed that the security agreement between Bank and Diversified described the collateral as "all equipment now owned or hereafter acquired including, *but not limited to,* the attached list marked Schedule A." (Emphasis added.) The collateral described in the security agreement is broad enough to include proceeds from the sale of the property made the basis of this suit.[2]

The cases cited by Crow–Southland are inapposite. *See In re California Pump & Mfg. Co.,* 588 F.2d 717, 719 & n. 1 (9th Cir.1978); *In re Tepper Indus.,* 74 B.R. 713, 714 n. 1 & 2 (Bankr.9th Cir.1987), *aff'd,* 840 F.2d 21, 840 F.2d 22 (9th Cir. 1988); *In re Freeman,* 33 B.R. 234, 234 (Bankr.C.D.Cal.1983). These cases involved financing statements and security agreements that clearly limited the collateral to property located at a specific address. The courts in all three cases held that the creditor did not have a security interest in property located at a different address. *California Pump,* 588 F.2d at 719; *Tepper Indus.,* 74 B.R. at 715–16; *Freeman,* 33 B.R. at 235–36. In the instant case, neither the security agreement nor the financing statement limits the collateral to property at a specific location. Although the parties stipulated that Bank attempted to limit the encumbered property by location, this attempt was unsuccessful because Exhibit "B" was never filed with the financing statement.

### 4. Conclusion

We conclude that the trial court correctly applied the law to the stipulated facts. Bank obtained a security interest in "all equipment now owned or hereafter acquired" by Diversified. This security interest was perfected when Bank filed a financing statement with the Secretary of

---

**2.** Although the security agreement lists Diversified's address as 4800 Simonton, it does not purport to identify or limit the collateral by location. *Cf. Navarro v. IBM Corp.,* 70 B.R. 94, 96 (Bankr.N.D.Tex.1987); *In re Door Supply Center, Inc.,* 3 B.R. 103, 105 (Bankr.D.Idaho 1980).

State. The financing statement sufficiently described the types or items of collateral to give notice to any third party. Bank's security interest was prior in time and superior to the contractual and statutory lien obtained by Crow–Southland. The trial court did not err in awarding the proceeds from the sale of the collateral to Bank.

We overrule Crow–Southland's first and second points of error.

### RENT AND ATTORNEY'S FEES

 In its third and fourth points of error, Crow–Southland contends that the evidence is legally and factually insufficient to support the trial court's failure to award a credit for the rental value of the leased premises and attorney's fees. Crow–Southland also asserts that it is entitled to a credit and attorney's fees as a matter of law and that the trial court's contrary findings and conclusions are against the great weight and preponderance of the evidence.

Crow–Southland argues that Bank did not dispute its claim for rent or attorney's fees. The parties stipulated that Crow–Southland sustained damages in the amount of $132,994.44 as a result of Diversified's failure to honor its obligations under the lease. However, they did not stipulate that Crow–Southland was entitled to a credit. We are unaware of any authority that allows a landlord to recover rent and attorney's fees from someone who is not a party to the lease. Absent some breach of legal duty, Bank cannot be liable to Crow–Southland for rent or attorney's fees. *See New Amsterdam Casualty Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 915 (Tex. 1967); *Burns v. Am. Nat'l Ins. Co.,* 280 S.W. 762, 764 (Tex.Comm'n App.1926, judgm't adopted).

We overrule Crow–Southland's third and fourth points of error.

### FAILURE TO MAKE REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

 In its fifth point of error, Crow–Southland maintains that the trial court erred in failing to file its requested findings of fact and conclusions of law. Crow–Southland contends that these additional findings and conclusions were timely submitted and supported by the evidence.

In a case tried on stipulated facts, a trial court cannot make any findings that do not conform to the agreed facts. TEX.R.CIV.P. 263; *Jay v. Devers,* 563 S.W.2d 880, 881 (Tex.Civ.App.—Eastland 1978, no writ). The additional findings requested by Crow–Southland are either covered by, or in conflict with, the original findings of fact and conclusions of law. The original findings and conclusions are supported by the stipulated facts and consistent with the applicable law.

We overrule Crow–Southland's fifth point of error.

The judgment is affirmed.