**In re GULF FORGE COMPANY, Debtor,**

v.

**ELLWOOD QUALITY STEELS COMPANY and Ellwood City Forge, Appellants,**

**Gulf Forge Company and LaSalle National Bank, Appellees.**

Civil Action No. H–95–5347. Bankruptcy No. 95–47434–H5–7.

United States District Court, S.D. Texas, Houston Division.

Oct. 4, 1996.

H. Gray Burks, IV, Houston, TX, for Gulf Forge Company.

J. Robert Van Kirk, Kirkpatrick & Lockhart, Pittsburg, PA, for Ellwood Quality Steels Company and Ellwood City Forge.

Janet Elaine Mortenson, Woodard Hall & Primm, Houston, TX, for LaSalle Nat'l Bank.

**MEMORANDUM AND OPINION**

ROSENTHAL, District Judge.

Ellwood Quality Steels Company and Ellwood City Forge, a Division of Ellwood Group, Inc., ("Ellwood"), file this consolidated appeal from orders of the bankruptcy court recognizing that LaSalle National Bank (the "Bank") had a perfected security interest in equipment owned by the debtor, Gulf Forge Company ("Gulf Forge"). Based on this finding, the bankruptcy court granted

the Bank's motion for relief from the automatic stay; denied relief on Ellwood's involuntary bankruptcy petition; and denied Ellwood's motion to enjoin the transfer of Gulf Forge's assets, or, in the alternative, for appointment of an interim trustee. Ellwood did not seek a stay pending this appeal, and the Bank proceeded to sell the equipment.

In this appeal, Ellwood asserts that the bankruptcy court erred in concluding that the Bank's description of collateral in the financing statement was sufficient to perfect the Bank's security interest in the debtor's equipment. Gulf Forge has filed a motion to dismiss the appeal as moot on the ground that Ellwood did not move for a stay; the equipment at issue has been sold; and there is no adequate remedy at law or other, equitable, relief.

Based on a careful review of the parties' briefs and submissions, the bankruptcy record, and the applicable authorities, this court DENIES the motion to dismiss the appeal as moot. This court finds no reversible error in the bankruptcy court's orders. This appeal is therefore DISMISSED.

## I. Background

Gulf Forge operated a steel forging business in Houston, Texas. In February 1989, the Bank made a loan to Gulf Forge and entered into a security agreement giving the Bank a security interest in certain Gulf Forge property. The Bank filed a UCC–1 financing statement with the Secretary of State, asserting a security interest in:

> The following property of Debtor whether now or hereafter existing or acquired and wherever now or hereafter located: accounts, accounts receivable, notes, contract rights, chattel paper, instruments, documents, conditional sales contracts, goods, including without limitation, inventory and furniture, general intangibles (including, but not limited to patents and trademarks) and all proceeds of any of the foregoing.

When the Bank filed this financing statement in 1989, it did not have a security interest in any of Gulf Forge's equipment. It is undisputed that the primary security was inventory and accounts receivable. The written security agreement had a line drawn through the word "equipment" in paragraph 4(d), the section providing for the grant of a security interest.

In March 1992, paragraph 4(d) of the Bank's security agreement was amended to include "all Equipment, vehicles, and fixtures." However, the Bank did not amend the financing statement.

By August 1993, Gulf Forge was unable to pay its debts. It owed Ellwood over one million dollars for steel ingots. In June 1994, Ellwood obtained a judgment against Gulf Forge in the amount of $1,399,867.59. In June 1994, Gulf Forge ceased operations. In April 1995, after unsuccessfully trying to find a single buyer, Gulf Forge surrendered its assets to the Bank. In July 1995, the Bank conducted a nonjudicial foreclosure of Gulf Forge's real estate. In September 1995, the Bank entered into an auction agreement for the sale of the machine shop equipment and into a purchase agreement for the private sale of the forge shop equipment.

On September 28, 1995, before the equipment sales, Ellwood and three other unsecured creditors filed an involuntary petition against Gulf Forge under Chapter 7 of the bankruptcy Code. Ellwood filed an emergency motion for an order enjoining the transfer of the assets or, in the alternative, for appointment of an interim trustee. The Bank filed a motion for relief from the automatic stay and to dismiss. It is undisputed that when the involuntary petition was filed, the only property Gulf Forge owned was the forge operation equipment and the machine shop equipment. It is also undisputed that as of the filing date, Gulf Forge owed the Bank over $1,150,000.00.

Following an evidentiary hearing, the bankruptcy court judge entered findings. The judge found that the foreclosure and the proposed sales were not fraudulent or collusive; that finding is not challenged on appeal. The second finding, the basis of this appeal, was that:

> the banks's lien does validly attach to the equipment at issue, and that pursuant to section 9.109 of the Texas Business and Commerce Code that goods do apply to equipment, and that if there is any argua-

ble vagueness in the general term, ... a creditor would be on inquiry notice to look for a security agreement by the lender.

(Tr. at 183). The bankruptcy court found that Gulf Forge had no equity remaining in the equipment. The court therefore granted the Bank's motion for relief from the automatic stay; denied Ellwood's motion to enjoin the transfer of the assets or alternatively to appoint an interim trustee; and dismissed the case. On October 12, 1995, the forge operation equipment was sold at a private sale, and on October 17, 1995 the machine shop equipment was sold at auction. The sales were subject to tax liens and to auction expenses.

In this appeal, Ellwood asserts that as a matter of law the Bank's interest in Gulf Forge's equipment was not adequately perfected. Ellwood argues that the Bank's financing statement description of the collateral as "goods" was not sufficient to perfect a security interest in the equipment. Ellwood seeks a reversal of the bankruptcy court's finding that the Bank's lien applied to the equipment at issue. Ellwood asks this court to remand with an order that the Bank return the proceeds of the sale of the equipment, less that portion of the proceeds attributable to vehicles in which the Bank did properly perfect a security interest (through notations on certificates of title), and less any appropriate taxes paid that were senior to the claims of unsecured creditors. Ellwood asks this court to have a trustee appointed to distribute the after-tax proceeds from the equipment sales to the unsecured creditors.[1]

The Bank responds that the bankruptcy court correctly concluded that the use of the word "goods" to describe "equipment" in the financing statement perfected a security interest in that equipment under the Texas Business and Commerce Code § 9.109. The Bank also responds that the bankruptcy court's factual finding, that the description of the collateral in the Bank's financing statement provided sufficient inquiry notice to a reasonably prudent creditor that the security

agreement covered Gulf Forge's equipment, was not clearly erroneous.

## II. The Standard of Review

In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992). This court will not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. FED.R.BANKR.P. 8013; *In re McDaniel,* 70 F.3d 841, 842–43 (5th Cir. 1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *In re McDaniel,* 70 F.3d at 843. This court reviews legal conclusions *de novo. Id.; In re Herby's Foods, Inc.,* 2 F.3d 128, 130 (5th Cir.1993).

## III. The Legal Standard Under Section 9.402

■ The parties agree on the following statement of the legal issue before this court:

> Appellants are asking this court to rule, as a matter of law, that it is never sufficient to use the term "goods" in an financing statement in order to perfect a security interest in equipment, even though "goods" includes "equipment" by definition.

(Docket Entry No. 12, Appellants' Brief, p. 1). The parties also agree that this court reviews *de novo* the bankruptcy court's conclusion that section 9.402 of the Texas Business and Commerce Code permits a party filing a financing statement to perfect a security interest in the "equipment" by using the term "goods." Section 9.402 of the Texas Business and Commerce Code sets out the requirements for perfecting a security interest, as follows:

> (a) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a state-

---

1. This appeal is not moot merely because the collateral has been sold, because the proceeds

may be distributed.

ment indicating the types, or describing the items, of collateral.

Tex.Bus. & Com.Code Ann. § 9.402(a) (Vernon Supp.1996).

The comment to Section 9.402 explains the purpose of the financing statement in Texas, a "notice filing" state, as follows:

> This section adopts the system of "notice filing". . . . What is required to be filed is . . . only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

Tex.Bus. & Com.Code Ann. § 9.402, comment 2 (Vernon Supp.1996).

The test for the sufficiency of a financing statement is set out in Section 9.110, which provides:

> Except as provided in Subsections (c) and (f) of Section 9.402, any description of personal property or real estate is sufficient for the purposes of this chapter whether or not it is specific if it reasonably identifies what is described.

Tex.Bus. & Com.Code Ann. § 9.110 (Vernon 1991).

The Bank correctly notes that under these provisions, "the critical inquiry in assessing whether a security interest is perfected is whether a reasonably prudent subsequent creditor would have discovered the prior security interest." *In re McBee*, 714 F.2d 1316, 1321 (5th Cir.1983); *see also Continental Credit Corp. v. Wolfe City Nat. Bank*, 823 S.W.2d 687, 689 (Tex.App.—Dallas 1991) (the "critical inquiry in assessing whether the creditor has perfected a security interest is whether a reasonably prudent subsequent creditor would have discovered the prior security interest. The trial court must make this assessment based on the particular facts of each case."); *In re Torgerson*, 114 B.R. 899, 901–902 (Bankr.W.D.Tex.1990); *Crow–Southland Joint Venture v. North Fort Worth Bank*, 838 S.W.2d 720, 723–724 (Tex. App.—Dallas 1992, writ denied); *Marine Drilling Co. v. Hobbs Trailers*, 697 S.W.2d 831, 833 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

The bankruptcy court's implicit conclusion of law, which this court reviews *de novo*, is that the financing statement description of the collateral to cover "goods, including without limitation, inventory and furniture," could perfect a security interest in Gulf Forge's equipment. The bankruptcy court implicitly rejected the position Ellwood asks this court to adopt on appeal, that as a matter of law, it is never sufficient to use the term "goods" in a financing statement to perfect a security interest in equipment.

No case decided under Texas law holds that the use of the term "goods" in a financing statement is insufficient as a matter of law to perfect a security interest in equipment. Nor does any case specifically hold that a financing statement that identifies the type of collateral covered as "goods" is always sufficient to perfect a security interest in equipment. There are a number of cases holding that broad, "super generic" descriptions of collateral, such as "all property," or "all assets," are insufficient to perfect a security interest. *See World Wide Tracers, Inc. v. Metropolitan Protection, Inc.*, 373 N.W.2d 839, 842 (Minn.App.1985) (holding that the phrase "all property" does not describe by item or type, and is therefore insufficient to perfect a security interest), *aff'd* 384 N.W.2d 442 (Minn.1986); *In re Fuqua*, 461 F.2d 1186, 1188 (10th Cir.1972) (holding that the phrase "all personal property" is not an acceptable description); *Mogul Enterprises, Inc. v. Commercial Credit Business Loans, Inc.*, 92 N.M. 215, 585 P.2d 1096, 1098 (1978) ("all-inclusive, vague language such as [all assets] . . . is not sufficient to perfect a security interest"); *In Re E.P.G. Computer Services Inc.*, 20 U.C.C.Rep.Serv. 1084, 1976 WL 23711 (S.D.N.Y.1976) ("[i]f the defendant's description of collateral [all present and future assets of debtor] were acceptable, it would clearly frustrate the spirit of the statute").

Ellwood acknowledges that "goods" is more restrictive than such "super generic" descriptions. Ellwood argues that "goods" is nonetheless too broad to be a "type" of collateral for the purpose of Section 9.402. The Code does not support Ellwood's arguments.

The Texas Business and Commerce Code, Section 9.105(8), defines "goods" to include "all things which are movable at the time the security interest attaches or which are fixtures. . . ." Section 9.109 divides "goods" into four subclasses: consumer goods, equipment, farm products, and inventory. "Equipment" is defined as "goods" which are "used or bought for use primarily in business . . . or if the goods are not included in the definitions of inventory, farm products or consumer goods. . . ." Ellwood argues that although "goods" is specifically defined to include "equipment," "goods" is too broad a term to identify equipment as a "type" of collateral subject to a security interest. Ellwood argues that if "goods" was a "type" of collateral under Section 9.402, filing parties would simply use the term "goods" to identify collateral in financing statements, rather than the more specific subsets of "equipment," "inventory," "consumer goods," or "farm products." (Docket Entry No. 12, p. 4).

Section 9.109 of the Texas Business and Commerce Code specifically defines "goods" to include "equipment." The comment to Section 9.109 states that the four mutually exclusive classifications of goods may be important in many situations. Conspicuously absent from the list of such situations is the determination of the sufficiency of the collateral description in a financing statement under Section 9.402. Section 9.105, which defines "goods," is accompanied by an official comment specifically stating that:

> [f]or some purposes the Code makes distinctions between different types of collateral and therefore further classification of collateral is necessary. Collateral which consists of tangible property is "goods", defined in paragraph (1)(h); and "goods" are again subdivided in Section 9–109.

Comment 3, Tex.Bus. & Com.Code Ann. § 9.105 (Vernon 1991). The comment continues: "[w]hen the general term "goods" is used in this Article, it includes, as may be appropriate in the context, the subclasses of goods defined in Section 9–109." Section 9.102, comment 5, provides a list of rules organized under "types" of collateral, including "goods." The Code itself recognizes "goods" as a type of collateral and does not require that the term "goods" be broken down into subclasses for all purposes, or for the specific purpose relevant here.

Consistent with the Code definitions and terms, one Texas court has held that in a security agreement, the term "goods" is a sufficient description of collateral to create a security interest in inventory, another subclass of goods defined in Section 9.109. In *Unicut, Inc. v. Texas Commerce Bank–Chemical,* 704 S.W.2d 442 (Tex.App.—Hous. 1986, writ ref'd n.r.e.), the court applied the Section 9.110 criteria and approved a security agreement with a description of collateral that included "goods" as sufficient to create a security interest in "inventory." The Bank correctly points out that under Texas law, more specificity is required for collateral descriptions in security agreements than for collateral descriptions in financing statements. *See, e.g., Crow–Southland,* 838 S.W.2d at 723–724. Section 9.402(a) specifically allows a filing party to use a security agreement as a financing statement.

The parties describe the bankruptcy court's implicit legal conclusion as a rejection of Ellwood's contention that the term "goods" in the financing statement can never perfect a filing party's security interest in "equipment." This court finds no error in that conclusion.

■ The bankruptcy court expressly found that the financing statement was sufficient to place an interested party on inquiry notice that the Bank may have a security interest in the equipment. Reviewing this conclusion first as one of law, subject to *de novo* examination, this court finds no error. The financing statement described the collateral to cover "goods, including, without limitation, inventory and furniture." Although "inventory" is one of the four subclasses of goods under Section 9.109, the statement specifically covers "goods" as "including, without limitation, inventory and furniture." The Code specifically notes that "equipment" is principally defined by what it is not: "goods used in a business . . . which are not inventory and not farm products. . . . It will be noted furthermore that any goods which are not covered by one of the other definitions in this section are to be treated as equipment." Comment 5, Tex.Bus. & Com. Code § 9.109 (Vernon 1991). The financing

statement referred to "goods, including, without limitation, inventory and furniture." The other defined subclasses of "goods," consumer goods and farm products, are on their face inapplicable to this steel forging business. The presence of the clause, "goods, including without limitation inventory . . ." in the financing statement for Gulf Forge would certainly place a reasonably prudent creditor on inquiry notice as to whether equipment, the only other subclass of goods that could be covered, was encumbered.

Ellwood argues that using a specific classification "has become common practice in the country," citing to the Kansas version of Section 9–402 in support.[2] These citations support a conclusion that using specific descriptions is the *preferred* practice; however, they do not support an adoption of Ellwood's strict legal standard *requiring* a specific description.

This court affirms the legal conclusion reached by the bankruptcy court.

## IV. The Factual Finding was not Clearly Erroneous

The bankruptcy court's factual finding, that the collateral description contained in the Bank's financing statement was sufficient to put a creditor "on inquiry notice" of the Bank's security interest in Gulf Forge's equipment, was not clearly erroneous.

The collateral description in the financing statement at issue covered "goods, including, without limitation, inventory and furniture." A review of the transcript of the evidentiary hearing held on October 11, 1995 supports the bankruptcy court's factual finding that a reasonably prudent creditor would have been put on notice by the financing statement to inquire further into whether the Bank had a security interest in Gulf Forge's equipment. (Evidentiary Hearing, Oct. 11, 1995, vol. I, pp. 78–80); *see also, Marine Drilling Co.,* 697 S.W.2d at 833 (finding significance in the fact that the creditors were not misled by the financing statement description, but rather

never checked to see if a financing statement was ever filed). The bankruptcy court's conclusion was not clearly erroneous.

## V. The Bankruptcy Court did not Abuse its Discretion in Dismissing the Involuntary Case

This court has affirmed the bankruptcy court's conclusion and finding that the Bank held a properly perfected security interest in Gulf Forge's equipment. Ellwood has not challenged the bankruptcy court's conclusion that there was no equity in the estate for any of the debtor's other creditors. The bankruptcy court's dismissal of the involuntary case under Section 305(a) was within its discretion.

## VI. Conclusion

This court finds no reversible error in the bankruptcy court's order. This appeal is therefore DISMISSED.

---

**2.** The Kansas version of Section 9–402 states as follows:

A statement of collateral in a financing statement is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. 84–9–109, [equipment, inventory, consumer goods, farm products], and amendments thereto, or generally identifies other collateral by one or more of the following classifications: fixtures, documents, instruments, general intangibles, chattel paper, or accounts. K.S.A. 84–9–402.