Fred P. ECCHER and Evelyn R. Eccher, Plaintiffs-Appellees,

v.

SMALL BUSINESS ADMINISTRATION, Defendant-Appellant.

No. 79–1521.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 27, 1981.

Decided March 16, 1981.

Charles S. Vigil, Denver, Colo. (Ernest U. Sandoval, Walsenburg, Colo., with him on the brief), for plaintiffs-appellees.

James W. Winchester, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with him on the brief), for defendant-appellant.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

The United States appeals from an adverse judgment in an action for breach of

contract filed against the Small Business Administration (SBA). Jurisdiction was based upon 15 U.S.C.A. § 634.

The dispute originated from an SBA sponsored foreclosure sale of real and personal property in August 1973. Fred Eccher (Eccher) and his partner Ben Vigil (Vigil) submitted the high bid of $139,000 at a foreclosure sale for a package consisting of a storage building, various machinery and equipment and twelve flat bed trailers. They paid $27,000 down and agreed to pay the balance to the SBA on an installment basis.[1]

The sale terms were "as is, where is". The SBA did not warrant merchantable title to anything sold.

During the auction, Joe Crump, a stockholder of the defunct company whose assets were being sold, claimed the SBA could not provide clear titles to anything. [R., Vol. III, p. 6]. Milam Gray, the SBA loan officer, said the SBA could provide clear titles to everything they were selling. [R., Vol. III, p. 7, p. 133].

In December 1973, the SBA submitted a security agreement and financing statement to Eccher. Eccher refused to sign, claiming the collateral descriptions were overbroad. The SBA then refused to tender the titles to the flat bed trailers until Eccher signed the documents.

The security agreement tendered to Eccher which he refused to execute described the collateral as "all of debtor's machinery and equipment, including but not limited to those items shown on Exhibit A hereto." [Defendant's Exhibit 1]. The language used in the financing statement was equally pervasive, describing "all of debtor's machinery and equipment." [Plaintiff's Exhibit 4].

During the subsequent months, Eccher repeatedly requested delivery of the titles because he could not license his trailers with the bill of sale provided by the SBA. The SBA continually denied his requests, stating the titles would not be issued until the security agreement was signed.[2]

In October 1974, SBA loan officer, Howe, wrote Eccher a letter stating that the SBA did not want to encumber all of his property, only that property which Eccher purchased at the foreclosure sale. However, Howe requested that Eccher draw up the inventory. Eccher refused and the dispute continued.

In August 1976, in a state of frustration, Eccher signed the SBA documents and, concurrent therewith, the titles were tendered to him. However, due to unpaid taxes, the Colorado Department of Motor Vehicles refused to issue licenses to Eccher. Eccher returned to the SBA for Government certificates of release. However, it was not until March 1977 that Eccher finally obtained the licenses and was able to use the trailers he had purchased 43 months earlier.

## I.

The Government contends the SBA was under no duty to provide any documents other than a bill of sale under the terms of the "as is, where is" sale. SBA claims that the sale was to be without warranty as to title and that Eccher was delivered a bill of sale. This argument is without merit.

■ The bill of sale was useless to Eccher in his efforts to license his new trailers simply because the Colorado Department of Motor Vehicles required more proof of ownership. The fact that SBA sold to Eccher without warranty as to title did not excuse the SBA from its obligation to provide Eccher with proof of ownership reasonably sufficient to acquire licenses. The trial court did not err in finding an SBA duty to provide reasonable proof of ownership.

1. Shortly after the auction, Eccher bought Vigil's interest in the property and proceeded with this cause of action alone.

2. It is doubtful the SBA even had the titles because of their reluctance and apparent inability to comply with Eccher's requests to see the certificates.

## II.

The Government argues that the SBA acted reasonably in requiring an executed security agreement as a condition precedent to the delivery of the certificates of title.

■ As a general proposition, requiring an executed security agreement as a term of a sale is proper. C.R.S.1973 § 4–9–201. However, tendering a security agreement, as here, containing language so broad as to encumber "all debtor's machinery and equipment, including but not limited to those items shown on Exhibit A hereto" is not in keeping with the description requirements of C.R.S.1973 § 4–9–110. There is nothing in this record or any applicable law supporting the SBA requirement that Eccher encumber all of his machinery and equipment owned beyond the property purchased at the foreclosure sale as security for the purchase. That demand and requirement by SBA was unreasonable and arbitrary. The SBA was entitled to require that Eccher execute a security agreement embodying a sufficient description of the goods and property he purchased at the auction. The SBA acted unreasonably and in derogation of its agreement with Eccher in persisting that he execute the security agreement tendered.

## III.

The Government claims the transaction is controlled by Article 2 of the UCC, that Eccher accepted the trailers in accordance with C.R.S.1973 § 4–2–601 and § 4–2–606, but that he failed to revoke his acceptance as provided under C.R.S.1973 § 4–2–608, and that he also failed to notify the SBA of any breach of the contract. C.R.S. § 4–2–607.

Even assuming, *arguendo*, that the UCC controls, we hold that it does not dictate a result other than that reached by the trial court.

There is little doubt that Eccher accepted the trailers. C.R.S. § 4–2–606(1). The Government contention that Eccher failed to revoke his acceptance is specious. Eccher, at no time, indicated an intention of revocation. Rather, the record establishes only his intention of obtaining sufficient proof of ownership to allow him to license his trailers. There is utterly no support for the Government's contention that Eccher failed to notify the SBA of any nonconformity. Upon acceptance, Eccher had a duty to notify the SBA of any breach within a reasonable time after its discovery. C.R.S.1973 § 4–2–607(3)(a). Eccher gave timely and continuing notice to the SBA of the nonconformity. He initially did so when he refused to execute the faulty security agreement and financing statement forwarded to him from the SBA on December 14, 1973. Thereafter, he repeated his objections.

■ The failure of the SBA to provide a proper, adequate security agreement directly caused the unconscionable delay in Eccher acquiring titles. Thus, it constituted a breach of the contract. *Bunch v. Signal Oil and Gas Company*, 505 P.2d 41 (Colo.App. 1972).

Upon giving notice of nonconformity or breach, Eccher is entitled to damages as provided by C.R.S.1973 § 4–2–714 and § 4–2–715. He may recover the "loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." C.R.S. 1973 § 4–2–714(1). Additionally, recovery may be had for "incidental damages resulting from the seller's breach . . . and any other reasonable expense incident to the delay or other breach." C.R.S.1973 § 4–2–715(1).

## IV.

Finally the Government contends that, assuming liability, the trial court erred in its calculation of damages.

■ We will not disturb the district court's determination of damages unless

clearly erroneous. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.; *Whiteis v. Yamaha International Corporation,* 531 F.2d 968 (10th Cir. 1976), *cert. denied,* 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976).

■ The law clearly permits approximations as to the extent of damage, providing the fact of damage or lost profits is certain. It is sufficient if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be approximate. *Story Parchment Company v. Patterson,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1930); *Eaves v. Penn,* 587 F.2d 453, 463 (10th Cir. 1978).

■ The trial court found a $77,400 loss of rental income resulting from Eccher's 43-month inability to use the trailers. The testimony supported a rental range of $100 to $200 per trailer per month. The Court found Eccher suffered damage with certainty and that $150 per month per trailer was a legitimate and reasonable loss of rental income under the circumstances. We agree.

Additionally, we find no error in the trial court's award of $24,653.33 storage costs for the 43-month period inasmuch as it was a "cost incident to having the facility necessary for the rental."

■ Finally, the Government argues that the 43 months measure was erroneous. Instead, the Government contends that the time period should end in August 1976, when the manufacturers' statements of origin and the Texas titles were delivered to Eccher, rather than March of 1977, when Eccher actually obtained the licenses. We hold that the trial court did not err in finding 43 months the proper period for calculation of damage. In August 1976 the SBA had not delivered Eccher documents sufficient to permit him to license his trailers. It was not until March 1977, when Government certificates of release were finally issued, that Eccher was able to obtain the licenses for the trailers for which he had bargained 43 months earlier.

Applying the UCC, as the Government urges, results in the same damages awarded below. The buyer is entitled to reasonable damages. C.R.S. § 4–2–714 and § 4–2–715. The damage awarded is reasonable.

WE AFFIRM.