**WORLD WIDE TRACERS, INC., Appellant,**

v.

**METROPOLITAN PROTECTION, INC., formerly Protection Technologies, Inc., Defendant,**

**Metropolitan State Bank, John Hole, et al., Respondents.**

**No. C6–85–443.**

Court of Appeals of Minnesota.

Sept. 10, 1985.

Review Granted Nov. 1, 1985.

Terence P. Durkin, St. Paul, for appellant.

William M. Habicht, Edina, for Metropolitan State Bank.

Robert M. Smith, Minneapolis, for John Hole, et al.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

World Wide Tracers, Inc. appeals the trial court's ruling granting partial summary judgment in favor of Metropolitan State Bank. We affirm.

## FACTS

In July 1980, World Wide Tracers, Inc. (plaintiff/appellant) sold to Metropolitan Protection, Inc. (defendant) certain assets and properties.

To secure payment of the purchase price, Metropolitan Protection executed a security agreement and financing statement in favor of World Wide Tracers on July 15, 1980.

Both the security agreement and the financing statement purport to grant appellant a security interest. Both contain the following language to describe the collateral:

All of the property listed on Exhibit "A" attached hereto and made a part hereof, together with any property of the debtor acquired after July 15, 1980.

Exhibit "A" to the security agreement and financing statement is a list of equipment, furniture and fixtures owned by World Wide Tracers and sold to Metropolitan Protection. Exhibit "A" did not include any accounts receivable or contract rights.

In February 1982, respondent Metropolitan State Bank loaned money to Metropolitan Protection, which executed a promissory note in favor of the bank. Metropolitan Protection executed two security agreements in favor of the bank, which contained the following language:

All accounts of borrower now existing or hereafter at any time acquired, and all contract rights of borrower now existing or hereafter at any time arising.

All equipment now owned or hereafter acquired, including, but not limited to, office furniture and uniforms.

Metropolitan Protection also executed a financing statement in favor of the bank which contained the following language to describe the collateral:

All accounts receivable and contract rights now owned or hereafter acquired.

All equipment now owned or hereafter acquired, including, but not limited to, office furniture and uniforms.

In November 1982, appellant sued Metropolitan Protection and John Hole, Gloria Hole and Raymond C. Lundreen (also respondents), the guarantors or principals of Metropolitan Protection's obligations. The bank answered and counterclaimed, asserting its perfected security interest in Metropolitan Protection's accounts receivable.

Metropolitan Protection filed for relief under Chapter VII of the Bankruptcy Code in November 1982.

In April 1983, the trial court granted a default judgment in favor of World Wide Tracers against defendants John Hole, Gloria Hole and Raymond C. Lundreen.

In May 1983, defendants made a motion to vacate the default judgment. Appellant made a motion for partial summary judgment seeking to recover Metropolitan Protection's accounts receivable. In June, the trial court granted defendants' motion to vacate. The court also granted respondent bank summary judgment, declaring appellant's security agreement and financing statement failed as a matter of law to perfect its security interest in Metropolitan Protection's accounts receivable. Appellant's motion to vacate was denied, and on June 20, 1983 summary judgment was entered. World Wide Tracers appeals this judgment.

## ISSUE

Did the trial court err in granting partial summary judgment in favor of Metropolitan State Bank, which awarded the bank

accounts receivable of Metropolitan Protection?

## ANALYSIS

Appellant argues that its description of the collateral in both the security agreement and the financing statement is sufficient to perfect its security interest in the accounts receivable of Metropolitan Protection. The description attempted to secure "all property in Exhibit 'A,' together with any property of the debtor acquired after July 15, 1980."

This question involves interpretation of the applicable UCC provisions, as adopted by Minnesota. Under Minn.Stat. § 336.9–105(1)(1) (1982), "security agreement" means an agreement which creates or provides for a security interest. Under the UCC a security interest is not enforceable against the debtor or third parties unless the collateral is in the possession of the secured party, or the debtor has signed a security agreement which contains a description of the collateral. *See* Minn.Stat. § 336.9–203(1)(a) (1982).

In most instances, a financing statement must also be filed to perfect the security interest. *See* Minn.Stat. § 336.9–302 (1982).

■ A financing statement is sufficient if it gives the name of the debtor and the secured party, is signed by the debtor, gives an address of the secured party and the debtor, and "contains a statement indicating the types or describing the items of collateral." Minn.Stat. § 336.9–402(1) (1982).

For the purposes of both the security agreement and the financing statement,
... any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

Minn.Stat. § 336.9–110 (1982).

The courts have interpreted these provisions to determine how specific collateral descriptions in security agreements and financing statements must be to establish a security interest.

The Minnesota Supreme Court discussed the different specificity requirements for financing agreements and security agreements in *Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972). There, the court decided that a security agreement that gave plaintiff an interest "in all goods (as defined in Article 9 of the U.C.C.) whether now owned or hereafter acquired ..." sufficiently described the collateral. In that case, the financial statement specifically described the collateral.

The court stated that the principal function of a description of the collateral in a security agreement is to enable the parties themselves or their successors in interest to identify it, particularly if the secured party has to repossess the collateral or reclaim it in a legal proceeding. *Id.* at 286–87, 194 N.W.2d at 782. While the court did not reach the issue of the financing statement, it stated in a footnote:

The function of a financing statement is different than that of a security agreement in that the primary purpose of the former is to warn third parties and to place a limit upon what the creditor can take from the debtor, his other creditors, or a referee in bankruptcy. Better practice might dictate that, in framing a description in a financing statement, it be made more restrictive than "all goods" or "all goods except inventory." In the instant case, however, that problem does not arise, and we are not called upon to decide where to draw the line because, although plaintiff's security agreement was very broad and did cover all goods except inventory, its financing statement was much narrower and specifically covered only the debtor's construction equipment and motor vehicles ...

*Id.* at 287, 294 N.W.2d at 782, n. 3.

The guidance of *Talcott* leads us to the decision that the phrase "all property" does not sufficiently describe the collateral to create a security interest in the accounts receivable.

Appellant is correct that generally a financial statement is to put creditors on notice. However, Minn.Stat. § 336.9–402(1) states that the description must be specific enough to describe by item or type. The major flaw in both appellant's security agreement and financing statement is that "all property" does not describe by item or type. Therefore, the financing statement is insufficient to perfect a security interest, no matter what the security agreement says.

This ruling is in concert with decisions from other courts. Many courts have refused to allow broad or vague descriptions of collateral in security agreements or financing statements. For example, the phrase "all personal property" does not even approach a description of property by type or description as is required by the Kansas statute. *In re Fuqua*, 461 F.2d 1186 (10th Cir.1972).

The Tenth Circuit held that the description "all assets as contained in the security agreement (installment note)" did not satisfy the financial statement requirements of § 9–402(1). *Matter of H.L. Bennett Co.*, 588 F.2d 389 (10th Cir.1978).

In another case, "goods, wares and merchandise" was specific enough in the financing statement to indicate the type of collateral, but did not reasonably identify the collateral for the security agreement as required in § 42a–9–110. This suggests that the phrase "all property" would neither be sufficient for the financing agreement nor the security agreement. *Milhender Distributing Co. v. Fairway Wholesale, Inc.*, 21 U.C.C. Rep.Serv. 1429 (D.Conn.1977). *See also Miller v. International Business Machines Corp.*, 20 U.C.C. Rep.Serv. 1084 (S.D.N.Y.1976) ("[T]he proceeds of all the present and future assets of [debtor]" was an insufficient description for either the security agreement or the financing statement.)

*See also Mogul Enterprises, Inc. v. Commercial Credit Business Loans, Inc.*, 25 U.C.C. Rep.Serv. 293 (N.M.1978) (All inclusive vague language such as "all assets ... regardless of type or description

now owned ... or to be bought in the future ..." did not sufficiently denote the type or items of property for the requirements of the financing statement); *Eccher v. Small Business Administration*, 643 F.2d 1388 (10th Cir.1981) (A security agreement containing the language "all of debtor's machinery and equipment, including but not limited to those items shown on Exhibit A hereto" was not a sufficient description for the security agreement under the statute).

One court approved the phrase, "[e]quipment ... including but not limited to ... all tangible personal property ... proceeds of collateral and products of collateral." The court found it sufficiently described funds held in a special bank deposit derived solely from accounts receivable resulting from proceeds or products of the debtor's tangible personal property. *In re JCM Cooperative, Inc.*, 8 U.C.C. Rep.Serv. 247 (W.D. Mich.1970). This description, however, is much more specific than "all property."

■ Because the phrase "all property" does not describe the collateral by item or type as required by Minn.Stat. § 336.9–402(1), we affirm the trial court's ruling granting summary judgment in favor of Metropolitan State Bank.

### DECISION

We affirm the decision of the trial court.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent:

1. When World Wide Tracers, Inc. received a security agreement and financing statement covering any property acquired after July 15, 1980, and the property listed on Exhibit A, the financing statement was filed with the Secretary of State. When Metropolitan State Bank made its later loan in 1982, it also received a security agreement and financing statement.

The function of a financing statement is to warn a third party what it can take from the debtor. The Bank, however, failed to make inquiry when it made the loan and failed to discover what was already encum-

bered. It failed to exercise ordinary diligence in inquiring what property was already encumbered by the filed financing statement.

2. The words "any property acquired after July 15, 1980" was sufficient to put the Bank on notice if it had bothered to check the filings with the Secretary of State's office. The description "all property" or "any property" stated what the parties intended in the first loan. It reasonably would have put the Bank on notice before the Bank made its subsequent loan what the prior financing statement covered. All the Bank needed to do was to check the filings and make a proper inquiry. Its failure to take the necessary precautions prior to making its loan should not defeat appellant's prior secured interests.

3. The Minnesota Supreme Court said in *James Talcott v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972):

> If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. Upon the default, the creditor takes everything to which the debtor previously agreed, hence, identification is no problem.

*Id.* at 282, 194 N.W.2d 775.