In re BAKERSFIELD WESTAR
AMBULANCE, INC.,
Debtor.

Randell PARKER, Appellant,

v.

COMMUNITY FIRST BANK, Appellee.

No. 96–16287.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1997.

Decided Aug. 22, 1997.

T. Scott Belden, Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, Bakersfield, CA (Michael S. Abril, on the brief), for appellant.

Ray T. Mullen, Law Office of Ray T. Mullen, Bakersfield, CA, for appellee.

Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge.[*]

FARRIS, Circuit Judge:

Randell Parker, Chapter 7 Trustee for Bakersfield Westar, Inc., initiated this proceeding against Community First Bank to recover monies set off by the Bank within ninety days of Westar's petition in bankruptcy. The bankruptcy court entered summary judgment in favor of Parker. The district

court reversed, and Parker appeals. We have jurisdiction under 28 U.S.C. § 158(d). We reverse.

## I.

### BACKGROUND

On July 13, 1992, Community First Bank loaned $103,189.26 to Bakersfield Westar, Inc. The loan was secured by two ambulances, "[a]ll personal property of any kind which is delivered to or in the possession or control of [the] Bank or its agents," and proceeds from the described collateral. The loan was also guaranteed by Craig and Jodee Saunders and Craig Saunders, M.D., Inc. In October 1992, the parties revised and extended the loan, leaving all security instruments in place. The Bank extended Westar a "Mastercard" line of credit.

On December 4, 1993, Westar owed the Bank $20,064.00 on the line of credit and $87,219.41 on the loan. On that date, Westar maintained $37,807.86 in a deposit account at the Bank.

Westar became delinquent on the line of credit. On January 18, 1994, the Bank set off $20,164.40 from Westar's deposit account to satisfy Westar's credit obligation. On January 20, Westar defaulted on the loan, and the Bank set off an additional $57,466.43 from the Westar account in partial satisfaction of the loan obligation.

On March 4, 1994, the Chapter 7 Trustee for Craig and Jodee Saunders' bankruptcy estate, Patrick Kavanagh, filed a Chapter 7 petition for Bakersfield Westar Ambulance, Inc.[1] On October 14, 1994, Parker filed the present action against the Bank, contending that the January 18 and 20 setoffs were partially avoidable under 11 U.S.C. § 553(b).

The parties filed cross motions for summary judgment. The bankruptcy court granted Parker's motion and denied the Bank's. The court ruled that (1) section 553(b) applied regardless of whether the

---

[*] The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

[1.] In both the bankruptcy and district courts, the Bank argued that the bankruptcy court was without jurisdiction over Parker's action because

Westar's petition had been filed under the wrong corporate name. Both courts rejected this argument. Kavanagh amended the petition to properly reflect the name of the debtor corporation on October 11, 1995. The Bank has not raised the jurisdictional argument in this appeal.

Bank's claim against Westar was secured; and (2) the Security Agreement between Westar and the Bank did not grant the Bank a security interest in Westar's deposit account.

The district court reversed, holding that (1) section 553(b) does not apply to setoffs against secured claims; (2) the Bank could maintain a security interest in Westar's deposit account under California law; and (3) the Bank held a security interest in Westar's deposit account. Parker appeals.

## II.

## STANDARD OF REVIEW

■ The roles of this Court and the district court are essentially the same in the bankruptcy appellate process. *In re DAK Industries,* 66 F.3d 1091, 1094 (9th Cir.1995). We therefore review the bankruptcy court's decision directly. *Id.*

■ We review the bankruptcy court's grant of summary judgment de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir. 1996). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law. *Id.*

## III.

## DISCUSSION

■ "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995)(quoting *Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). While the Bankruptcy Code creates no federal right of setoff, section 553(a) of the Code preserves in bankruptcy rights of setoff which otherwise exist, subject to certain limitations. *Id.;* 11 U.S.C. § 553(a).

■ One such limitation is section 553(b), which provides in pertinent part:

> (b)(1) ... if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency
>
> (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. 553(b). This section permits a trustee to recover a prepetition setoff by a creditor to the extent the creditor "improved its position" relative to other creditors by setting off within ninety days of the filing of the petition. *See Smith v. Mark Twain Nat. Bank,* 805 F.2d 278, 289–90 (8th Cir.1986)(section 553(b) applies an "improvement in position test").[2]

It is undisputed here that the Bank had the right to set off Westar's funds under California law. *See Gonsalves v. Bank of America Nat. Trust & Sav. Ass'n,* 16 Cal.2d 169, 173–74, 105 P.2d 118 (1940). It is also undisputed that the Bank improved its posi-

---

2. The following example, derived from an example found in Collier's bankruptcy treatise, *see* 5 *Collier on Bankruptcy* ¶ 553.09[2][b], illustrates how the section works: Suppose a bank has a claim against a debtor for fifteen dollars. Ninety days before the debtor's petition is filed, he has ten dollars in a deposit account in the bank. At this point, the debtor's "insufficiency" is five dollars. *See* 11 U.S.C. 553(b)(2). Thirty days before the petition is filed, the debtor deposits four dollars into his account, raising the balance to fourteen dollars and reducing the insufficiency to one dollar. That day, the bank offsets the entire deposit against the debt, leaving a debt of one dollar. By offsetting on the thirtieth day, the bank improved its position relative to the ninety day benchmark by four dollars. Stated in statutory terms, the debtor's insufficiency was four dollars less on the date of the setoff than it was ninety days prepetition. Under section 553(b), the hypothetical trustee could recover that four dollars from the bank.

tion by means of the setoffs on January 18 and 20. The Bank argues, however, that section 553(b) does not apply where the off-setting creditor's claim is fully secured because a creditor with a fully secured claim cannot improve its position relative to other creditors. The factual predicate for this argument is, of course, that the Bank's claim was fully secured.

State law governs whether and to what extent the Bank held security interests in Westar's property. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Bank claims that its claim was secured under California law in two ways. Its primary argument is that it retained a security interest in Westar's deposit account itself by means of the Security Agreement. By setting off the funds, the Bank argues, it was in essence foreclosing on its security interest and thus did not improve its position relative to other creditors. The Bank's secondary argument is that its claim was fully secured by the ambulances, and thus it did not improve its position relative to other creditors by setting off the funds. We address each argument in turn.

## A.

### Did the Bank Hold a Security Interest in the Account?

Resolving this question involves two distinct inquiries: (1) whether the Bank could obtain a security interest in Westar's deposit account under California law and (2) whether the Bank did in fact obtain a security interest in the account by means of the Security Agreement.

### (1)

### Could the Bank obtain a Security Interest in Westar's Deposit Account Under California Law?

Division 9 of the California Commercial Code governs consensual security interests in personal property and fixtures. It applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts." Cal. Comm.Code § 9102(1)(a).

A prerequisite to the creation of a valid security interest under Division 9 is that "[t]he debtor has rights in the collateral." Cal Comm.Code § 9203(1)(c). Parker argues that a bank cannot obtain a valid security interest in one of its own deposit accounts because such a security interest would conflict with section 9203(1)(c). When funds are deposited at a bank, Parker argues, the money becomes the property of the bank, and the bank cannot retain a security interest in its own property.

This argument misidentifies the property right to which a bank's security interest in a deposit account attaches. Permitting a bank to hold a security interest in a deposit account does not permit the bank to hold a security interest in its own property because the security interest retained by the bank is not in the deposited funds. By depositing money into a bank account, the depositor enters a debtor-creditor relationship with the bank. *In re Bernard*, 96 F.3d 1279, 1282 (9th Cir.1996)(citing *Chang v. Redding Bank of Commerce*, 29 Cal.App.4th 673, 681, 35 Cal.Rptr.2d 64 (1994)). Title to the funds passes to the bank, and the depositor receives a contract claim against the bank for an amount equal to the account balance. *Id.* (citations omitted). It is to this intangible chose in action, rather than the deposited funds, that the bank's security interest attaches. *See In re Mycro–Tek, Inc.*, 191 B.R. 188, 193 (Bkrtcy.D.Kan.1996). In other words, the bank's interest attaches to an intangible personal property right, a "general intangible" [3] of the depositor, not the bank's own property.

Further, it is clear that the California Legislature intended a bank to be able to obtain a Division 9 security interest in a depositor's chose in action against the bank.

---

**3.** The California Commercial Code defines "general intangibles" as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property, rights to proceeds of written letters of credit, and money." Cal. Comm. Code § 9106. The "accounts" excluded from the definition of general intangibles are "right[s] to payment for goods sold or leased or for services rendered." *Id.* In other words, they are traditional accounts receivable, not bank accounts.

*See Johanson Transportation Service v. Rich Pik'd Rite, Inc.,* 164 Cal.App.3d 583, 210 Cal.Rptr. 433 (1985)(recognizing bank's security interest in restricted deposit account under California Commercial Code); *see also In re Mycro–Tek, Inc.,* 191 B.R. at 193 (recognizing a bank's security interest in a deposit account under California law). Division 9 of the California Commercial Code is essentially a codification of Article 9 of the Uniform Commercial Code. However, the California Legislature did not incorporate the entire Article into California law; it made some changes. *See* Cal. Comm.Code, Division 9, Introductory Comment ("In adopting Division 9 ... California departed from its policy of adopting the Code in its Official Text form."). One such change was the rejection of the U.C.C.'s deposit account exclusion, which excludes deposit accounts from the scope of Article 9 except where the account constitutes proceeds from other collateral. *See* U.C.C. § 9–104(*l*). The California Legislature omitted the exclusion from the California Commercial Code in order to "avoid narrowing the definition of general intangibles in section 9106 and in order to make Division 9 cover substantially all the field of secured transactions and personal property." Cal. Comm.Code § 9104, comment 10. Further, the Legislature enacted a special perfection provision for security interests in deposit accounts. Where the secured party is the depository bank, the bank's interest in the account is perfected upon execution of the security agreement; no financing statement need be filed. Cal. Comm.Code § 9302(1)(g)(i). The Legislature would not have passed this provision had it not envisioned that such security interests could be obtained in the first place.

The California Commercial Code permits a bank to obtain a security interest in the depositor's chose in action against the bank. The question thus becomes whether the Bank obtained a security interest in Westar's account by means of the Security Agreement.

### (2)

### Did the Bank obtain a Security Interest in Westar's Deposit Account Under California Law?

■ To create a valid security interest in California, a security agreement must contain "a description of the collateral." Cal. Comm.Code § 9203(1)(a). California Commercial Code section 9110 explains what constitutes an adequate description of the collateral:

> [A]ny description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. Personal property may be referred to by general kind or class if the property can be reasonably identified as falling within such kind or class or if it can be so identified when it is acquired by the debtor.

Cal. Comm.Code § 9110. We have explained that to satisfy section 9203's writing requirement, a security agreement "must contain at least a general description which an objective observer would find to include the collateral in question." *Matter of California Pump & Manufacturing Co., Inc.,* 588 F.2d 717, 720 (9th Cir.1978)(quoting J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 866 (1972)); *see also In re Amex–Protein Dev. Corp.,* 504 F.2d 1056, 1060 (9th Cir.1974)("The description in the security agreement is sufficient, however, if it provides such information as would lead a reasonable inquirer to the identity of the collateral.").

The Bank relies on Paragraph C of the Security Agreement as the basis for its security interest in Westar's account. Paragraph C grants the Bank a continuing security interest in "[a]ll personal property of any kind which is delivered to or in the possession of Bank or its agents." According to the Bank, this description "reasonably identifies" the funds in Westar's deposit account as collateral because such funds are personal property that Westar delivered to the Bank.

The bankruptcy court properly rejected this argument. Neither the specific account at issue nor bank accounts in general are addressed in the Security Agreement. And though the California Code permits reference to property of a "general kind or class," the property in which the Bank asserts an interest is not of the kind or class described in Paragraph C. As explained in part IIIA(1), *supra,* when a bank holds a security interest in a deposit account, its interest is not in the

money deposited in the bank; it's in the debtor's intangible chose in action against the bank. Westar did not physically deliver its intangible contract right to the Bank. Nor was Westar's claim somehow in the Bank's "possession." No "objective observer" could find that Westar's chose in action was personal property "delivered to or in the possession of [the] Bank or its agents."

■ "The description of the collateral in the security agreement defines the extent of the security interest." *Northwest Acceptance Corp. v. Lynnwood*, 841 F.2d 918, 922 (9th Cir.1988). Because the Bank's purported collateral-Westar's chose in action-is not sufficiently described in the Security Agreement, no valid security interest attached. The Bank's claim that it was in essence foreclosing on collateral by setting off the funds fails. Unless the Bank's claim was otherwise fully secured at the time of the setoffs, section 553(b) is applicable to its setoffs, regardless of whether it applies to setoffs against fully secured claims.

### B.

Was the Bank's Claim Against Westar Fully Secured by the Ambulances at the Time of the Setoffs?

■ The Bank's secondary argument is that it did not improve its position by setting off because it was fully secured by the two ambulances. It relies on Parker's assertion in his complaint that

[f]rom the date the Note was delivered to CFB, and at all times hereinafter, the Ambulances had a fair market value greater than the current balance of the Debtor's obligations under the Note.

The Bank seeks to bind Parker to this statement. "[A]dmissions in pleadings are generally binding on the parties and the Court." *American Title Ins. Co. v. Lacelaw, Corp.*, 861 F.2d 224, 226 (9th Cir.1988).

■ But the Bank did not raise its judicial admission argument in the bankruptcy court. Had it done so, Parker would have had the opportunity to amend his complaint or otherwise explain the admission so as to avoid being bound. *See Lacelaw*, 861 F.2d at 226 ("Factual assertions in pleadings and pretrial orders, *unless amended*, are considered judicial admissions conclusively binding on the party who made them." (emphasis added)); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir.)("Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."), *cert. denied,* — U.S. ——, 116 S.Ct. 170, 133 L.Ed.2d 111 (1995). We generally do not consider arguments raised for the first time on appeal, *McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir.1997), especially where, as here, doing so would prejudice the other party, *see Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985)(refusing to consider issue raised for first time on appeal where opposing party's trial tactics may have been different had issue been raised in the trial court). Because the Bank failed to raise its judicial admission argument in the bankruptcy court, we refuse to consider it here.

Without the judicial admission argument, the Bank's contention that its claim was fully secured by the ambulances fails. The record reveals that the bank repossessed and sold the ambulances at some point before the summary judgment hearing in the bankruptcy court. This raises a question: If the Bank's claim was fully secured by the ambulances, and the Bank has sold the ambulances, why are the parties here? Why hasn't the Bank turned over the excess funds to the estate? The answer also appears in the record, and was acknowledged by the Bank at oral argument: there are no excess funds. The Bank's claim clearly was not fully secured by the ambulances.

### IV.

### CONCLUSION

The Bank did not have a security interest in the Westar deposit account, and the Bank's claim was undersecured by the ambulances. We need not decide whether section 553(b) applies to setoffs against fully secured claims because the Bank did not hold such a claim against Westar. The district court's order reversing the bankruptcy court's entry of summary judgment in favor of Parker is

REVERSED and the case REMANDED for further proceedings.