Opinion by JUDGE FOX
¶ 1 Mary Beth Wheeler, personal representative of the Estate of David Wheeler,[1] appeals the trial court's grant of summary judgment to Tower Building, LLC and Lorraine E. Ring (collectively Landlord). The trial court held that the lease for use of Landlord's building created an enforceable security interest in David's personal property, which was located in his jewelry store when he died. David's personal property was sold at a liquidation sale, and the trial court found that the proceeds of the sale were subject to Landlord's security interest.
¶ 2 As a matter of first impression in Colorado, we conclude that the lease created an enforceable security interest where the lease described the collateral as all the debtor's personal property and identified the location of the property. Accordingly, we affirm the trial court's judgment.
I. Background
¶ 3 David was the sole proprietor of a jewelry store located in a building owned by Landlord. After David died, Landlord filed a claim to recover unpaid rent and interest. Landlord asserted that David's lease for his jewelry store granted it a security interest in David's personal property located in the store at the time of his death. The lease provided as follows:
[David] hereby grants to Landlord a lien upon and a security interest in all property now owned or hereafter acquired by [David] which shall come in or be placed upon the Premises, to secure the payment of rent and the performance of each and every other obligation hereunder to be performed by [David].
¶ 4 Landlord requested an inventory of the personal property located in the jewelry store and asked that the property be promptly removed from the premises. Mary Beth conducted an inventory of the tangible personal property in the store, which included scrap gold, merchandise, and business equipment and fixtures. The parties agreed to conduct a liquidation sale of all the assets of David's jewelry store, which yielded about $53,000. Because the proceeds of the liquidation sale were less than the amount owed, Landlord claimed a security interest in all the sale proceeds.
¶ 5 Mary Beth, as personal representative, disputed the enforceability of Landlord's security interest in the proceeds of the liquidation sale. The trial court granted Landlord's motion for summary judgment, holding that Landlord had an enforceable security interest in the personal property in the store, and thus in the proceeds of the liquidation sale.
¶ 6 This appeal followed.
*485 II. Standard of Review
¶ 7 We review grants of summary judgment and statutory interpretation de novo. West Elk Ranch, L.L.C. v. United States, 65 P.3d 479, 481 (Colo.2002) ; McIntire v. Trammell Crow, Inc., 172 P.3d 977 (Colo.App.2007).
III. Sufficiency of Collateral Description
¶ 8 Mary Beth contends that the trial court erred in granting Landlord's summary judgment motion. She claims that Landlord does not have an enforceable security interest because the description of the secured collateral in the lease is "supergeneric," and thus fails to meet the sufficiency of description standard of the Uniform Commercial Code (UCC),[2] section 4 - 9-108, C.R.S. 2012. Section 108 provides that a description of collateral reasonably identifies said collateral if (1) the collateral is "objectively determinable," § 4-9-108(b)(6), and (2) the collateral is not referenced as merely "all the debtor's assets" or "all the debtor's personal property," § 4-9-108(c).[3] Because here the lease adequately described the security interest, we affirm the trial court's judgment.
A. Applicable Law
¶ 9 The purpose of the UCC is to provide a uniform structure for business transactions and to allow for flexibility and expansion of commercial practices through "custom, usage, and agreement of the parties." § 4-1-103(a)(2), C.R.S.2012; see also In re Amex-Protein Dev. Corp., 504 F.2d 1056, 1058-59 (9th Cir.1974). Thus, courts must be flexible when determining whether a security agreement provides a sufficient description of the collateral such that the property described may be reasonably identified. UCC § 9-108, official comment 2 ("The test of sufficiency of a description under this section ... is that the description do the job assigned to it: make possible the identification of the collateral described. This section rejects any requirement that a description is insufficient unless it is exact and detailed...." ); In re Bakersfield Westar Ambulance, Inc., 123 F.3d 1243, 1247 (9th Cir.1997) ("[A] security agreement 'must contain at least a general description which an objective observer would find to include the collateral in question.' ") (quoting In re Cal. Pump & Mfg. Co., 588 F.2d 717, 720 (9th Cir.1978) ); In re Amex-Protein Dev. Corp., 504 F.2d at 1061 ("A description need not be so comprehensive that it enables an interested party to determine exactly what the specific collateral is, from a reading of the security agreement or financing statement alone. It is enough if the description allows a third party, aided by information which the security agreement suggests, to identify the property.") (quoting D. Lee, Perfection and Priorities Under the Uniform Commercial Code, 17 Wyo. L.J. 5-6 (1962)).
¶ 10 A security interest is enforceable against the debtor and third parties if the security agreement provides a sufficient description of the collateral. § 4-9-203(b)(3)(A), C.R.S.2012. The description is sufficient when it reasonably identifies the collateral or is otherwise "objectively determinable." § 4-9-108(a) (description is "sufficient, whether or not it is specific, if it reasonably identifies what is described") and § 4-9-108(b)(6) ("any other method" suffices "if the identity of the collateral is objectively determinable"); see Young v. Golden State Bank, 39 Colo.App. 45, 48, 560 P.2d 855, 858 (1977) ("Except in the case of consumer goods, a description of personal property is sufficient if it reasonably identifies what is described."); In re Brown, 479 B.R. 112, 119 (Bankr.D.Kan.2012) ( "Collateral is reasonably identified if it is identified by a 'specific listing,' category, UCC collateral type, quantity, computational formula, or 'any other method, if the identity of the collateral is objectively determinable.' ") (quoting UCC § 9-108(b) ).
*486 ¶ 11 However, a description that identifies the collateral simply as " 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral." § 4-9-108(c).
¶ 12 In determining whether a security interest has been created, courts may not only look at the words in the instrument, but also at the intent of the parties. In re Amex-Protein Dev. Corp., 504 F.2d at 1059 ("While there are no magic words which create a security interest[,] there must be language in the instrument which [ ]leads to the logical conclusion that it was the intention of the parties that a security interest be created.[ ]"); see also 3 Cathy Stricklin Krendl & James R. Krendl, Colorado Methods of Practice § 90:2 (5th ed. 2013) ("If the intent was to protect one party against the nonperformance of an obligation by the other through the creation of an interest in personal property or fixtures, then a security interest was created.").
B. Analysis
¶ 13 As noted, David's lease stated: "[David] hereby grants to Landlord a lien upon and a security interest in all property now owned or hereafter acquired by [David] which shall come in or be placed upon the premises " (emphasis added). The lease identified the leased premises as Suite 164 in the "Tower Building located at 1544 Oxbow Drive in the Oxbow Crossing Shopping Center in Montrose County, Colorado," and the permitted use as "retail sales of fine and/or costume jewelry." David was the only tenant on the lease.
¶ 14 Courts, including a division of this court, have upheld collateral descriptions even when they were broad in scope and did not specifically identify the property. See Vance v. Casebolt, 841 P.2d 394, 397 (Colo.App.1992) (upholding a security agreement that described the collateral as "all of Debtor's tangible personal property including, without limitation, all present and future inventory, goods, merchandise, furniture, fixtures, office supplies, motor vehicles, equipment, machinery, now owned or hereafter acquired, including, without limitation, the tangible personal property used in the operation of the Debtor's processing facility") (emphasis omitted); see also In re Amex-Protein Dev. Corp., 504 F.2d at 1061 (upholding a collateral description in a security agreement even when it did not identify the property, because it referenced a financing statement that identified the property); In re Ziluck, 139 B.R. 44, 46 (S.D.Fla.1992) (upholding a collateral description in a credit card agreement that granted a security interest in "all merchandise charged to your account" because it reasonably identified what it described).
¶ 15 A description of the location of the property in the collateral description can be a significant factor in validating a security interest. See In re Freeman, 33 B.R. 234, 235 (Bankr.C.D.Cal.1983) (holding that because the collateral description in a security agreement was specifically limited to items located at one store location, once the store moved and sold all its inventory from the old location, the security agreement no longer reasonably identified the new inventory at the new location); but see Lankford v. United States, 71A A.F.T.R.2d 93-4396 (M.D.Tenn.1991) (unpublished opinion) (upholding security interest with a similar collateral description, where the business moved and the debtor did not amend the financing statement, but the existing financing statement was not seriously misleading such that refiling was necessary to maintain a perfected security interest).[4]
¶ 16 The determination that David's lease sufficiently described the collateral as his personal property on the leased premises advances the purposes of the UCC, which is to "facilitate credit transactions by making commercial documents enforceable according to their stated terms and, therefore, reliable."
*487 Childers & Venters, Inc. v.Sowards , 460 S.W.2d 343, 345 (Ky.1970) ; see also 1 Larry Lawrence, Anderson on the Uniform Commercial Code § 1-102:266 (3d ed. updated June 2012). David contracted with Landlord for the use of its building for his jewelry store. The parties to the lease agreed in writing that if David could not pay his rent, Landlord could claim possession of David's personal property in his store on the premises. Under the UCC, when parties contract in writing, they are bound by that writing. Childers & Venters, Inc., 460 S.W.2d at 345.
¶ 17 The cases Mary Beth relies upon are distinguishable. See Eccher v. Small Bus. Admin., 643 F.2d 1388 (10th Cir.1981) ; In re Bakersfield Westar Ambulance, Inc., 123 F.3d 1243 (9th Cir.1997) ; In re Fairway Wholesale, Inc., 21 UCC Rep.Serv. 1429 (D.Conn.1977) ; In re I.A. Durbin, Inc., 46 B.R. 595 (Bankr.S.D.Fla.1985).
¶ 18 In Eccher, 643 F.2d at 1391, the Tenth Circuit held that a security agreement was unreasonable and arbitrary when it encumbered all of the plaintiffs' property, not just the property involved in the transaction. Thus, Eccher is distinguishable from the facts here because the security interest in David's lease was limited to his personal property found within the leased premises.
¶ 19 The Fairway Wholesale, Inc. court found that there was no enforceable security interest in "all the goods, wares, and merchandise" because such a collateral description did not distinguish among inventory of different consignors on the wholesaler's premises. 21 UCC Rep.Serv. at 1435. Here, there is no dispute about which property the collateral description references: David was the only person on the lease and the sole proprietor of the jewelry store.
¶ 20 Finally, neither Bakersfield Westar Ambulance, Inc. nor I.A. Durbin determined whether a collateral description sufficiently described the secured property. Rather, they both involved collateral descriptions that did not include the disputed property. Bakersfield Westar Ambulance, Inc., 123 F.3d at 1247-48 (holding that "[a]ll personal property of any kind which is delivered to or in the possession of Bank or its agents" did not create a security interest in the interest in debtor's deposit account because interest is intangible property and is not technically in the "possession" of the bank); I.A. Durbin, Inc., 46 B.R. at 598 (holding that a financing statement covering "[a]ll property rights of any kind whatsoever, whether real, personal, mixed or otherwise, and whether tangible or intangible, encumbered by the above-mentioned mortgage" was not sufficiently descriptive to alert third parties that the defendant also had a security interest in debtor's contracts receivable). The sufficiency of the collateral description is not at issue here.
¶ 21 Mary Beth next argues that if the collateral description had included the words "inventory, equipment, fixtures, and consumer goods," it would have been sufficient. We are not persuaded. Even without those descriptive words, for the reasons stated below, the secured property was reasonably identifiable and objectively determinable. See § 4-9-108(a), (b)(6).
¶ 22 First, it is reasonable that a tenant and landlord would agree to secure a lease with the tenant's personal property within the premises as collateral. See, e.g., Eccher, 643 F.2d at 1391 (holding that it would have been reasonable for the lender to require a security interest in the goods purchased with the loan, but it was not reasonable to require a security interest in all the purchasers' goods); I.A. Durbin, Inc., 46 B.R. at 597 (holding that a lien upon several parcels of property created a security interest in certain personal property located upon or related to the parcels of property).
¶ 23 Second, the property sold at the liquidation sale-which the parties stipulated included scrap gold, merchandise, business equipment, and fixtures-was reasonably identifiable as meeting the collateral description in the lease, namely, all the personal property in the leased premises. The property sold was also related to the business operated on the premises. Mary Beth did not assert in the trial court, and does not assert now, that any of the property actually sold at the liquidation sale was not associated with the jewelry store. She merely hypothesizes that if David had additional personal property at the store, for example, golf clubs, *488 it would not have been reasonable to assume that the lease intended to create a security interest in that additional property. This hypothetical argument is irrelevant and is unsupported by the record. See Sinclair Transp. Co. v. Sandberg, 228 P.3d 198, 210 (Colo.App.2009) (declining to address an argument that was asserted without supporting authority), reversed on other grounds sub nom. Larson v. Sinclair Transp. Co., 2012 CO 36, 284 P.3d 42.
¶ 24 Relying on Fairway Wholesale, Inc., 21 UCC Rep.Serv. 1429, Mary Beth argues that the court should not consider the circumstances of the transaction to discern the meaning of the collateral description. We do not read Fairway Wholesale to support her argument, and Colorado law provides otherwise. See, e.g., Compass Bank v. Kone , 134 P.3d 500, 503 (Colo.App.2006) (holding that where "the other requirements for enforcement of a security interest are satisfied, various documents may be considered together, by means of the doctrine of incorporation by reference, to construe the existence of a valid security agreement") (citing Pontchartrain State Bank v. Poulson , 684 F.2d 704, 707 (10th Cir.1982), and In re Numeric Corp ., 485 F.2d 1328, 1331-32 (1st Cir.1973) ). We need only look to the lease itself-which identifies the nature of the business and its location-to conclude that the collateral is reasonably identified and objectively determinable. See § 4-9-108(a), (b)(6) ; Young, 39 Colo.App. at 48, 560 P.2d at 858.
¶ 25 We conclude that the collateral description in David's lease reasonably identified the secured collateral as all of David's personal property at the jewelry store, including the scrap gold, merchandise, and business equipment and fixtures sold at the liquidation sale.
¶ 26 The judgment is affirmed.
JUDGE TAUBMAN and JUDGE ROMÁN concur.

To avoid confusion, Mary Beth Wheeler and David Wheeler will be referred to by their first names.

Article 9 of the Colorado Uniform Commercial Code is identical to the Revised Article 9 of the UCC. As a result, cases interpreting Article 9 of the UCC are applicable here. Georg v. Metro Fixtures Contractors, Inc. , 178 P.3d 1209, 1212 (Colo.2008) ("When a Colorado statute is patterned after a model code, as the Colorado statute is [after] the UCC, we may draw upon available persuasive authority in reaching our decision.").

Subsection (c) was added to the Revised Article 9 in 2000, but the official comment states that subsection (c) follows then prevailing case law.

While the ultimate results are different, the Lankford and Freeman decisions are reconcilable because Lankford concerned the collateral description in a financing statement, which does not need to be as specific as the collateral description in a security agreement. § 4-9-504, C.R.S.2012 (a financing statement sufficiently indicates the collateral that it covers if it merely states that it covers all assets or personal property).